1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - X
UNITED STATES OF AMERICA,    :
                            :    CR-11-591 (FB)
                            :
                            :
     -against-              :
                            :    United States Courthouse
                            :    Brooklyn, New York
                            :
                            :
PAUL PANZERA and BELAIR     :
PAYROLL SERVICES,           :    Thursday, June 19, 2014
                            :    3:00 p.m.
          Defendants.       :
                            :
                            :
                            :
- - - - - - - - - - - - - X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE FREDERIC BLOCK
UNITED STATES SENIOR DISTRICT COURT JUDGE

A P P E A R A N C E S:

For the Government:    LORETTA E. LYNCH, ESQ.
                       United States Attorney
                       BY: PATRICIA NOTOPOULOS, ESQ.
                           KEVIN MOSLEY, ESQ.
                           Assistant United States Attorneys

For the Defendant:    BY: PAUL GENTILE, ESQ.
                          MARSHALL MINTZ, ESQ.


Court Reporter:    FREDERICK GUERINO, CSR
                   Official Court Reporter
                   Telephone: (718) 613-2503
                   E-mail: Frederickguerino@aol.com


Proceedings recorded by computerized stenography.  Transcript
produced by Computer-aided Transcription.

2

1          THE COURT CLERK:  Criminal cause for sentencing:

2    United States of America v. Belair payroll services, as well

3    as Craig Panzera.

4          I ask counsel if you can state your appearances.

5          MR. GENTILE:  Good afternoon, your Honor.

6          Paul Gentile for the defendants Paul Panzera and

7    Belair Payroll Services.

8          MR. MOSLEY:  Kevin Mosley and Patricia Notopoulos

9    for the United States.

10          MR. MINTZ:  Marshall Mintz also for Mr. Panzera.

11          THE COURT:  This is Mr. Panzera?

12          MR. GENTILE:  This is Mr. Panzera, your Honor.

13          THE COURT:  Ms. Notopoulos, these folks and

14    everybody in front of me are my summer interns.

15          MS. NOTOPOULOS:  Quite a work force, Judge.

16          THE COURT:  Well, I took on some -- I take on

17    extra interns with each passing year, and I thought it would

18    be nice to let you know who they are, in case you were

19    curious.  I share something in common with them, because

20    neither the judge, nor the interns, have ever seen a case

21    exactly like this.

22          MS. NOTOPOULOS:  That's true.

23          MR. GENTILE:  That's true.

24          THE COURT:  So we are pretty much in the same

25    boat.  So let's collaborate to make sure we take care of all

3

1  of these niceties.  We'll work through this thing together.

2       We have corporate responsibility, and we have

3  individual responsibility here, so I think we should start

4  with the individual responsible first, okay.  Does that make

5  sense?

6       MR. GENTILE:  Whatever pleases the court.

7       THE COURT:  Take a look at the PSR, and I will

8  tell what I have in the file here with respect to Mr.

9  Panzera individual responsibility.  They are not in any

10  necessary order of priority.

11       We have the sentence recommendation with the

12  comment, and I assume counsel has had the opportunity to

13  review this, because it's my practice to making it available

14  to counsel.

15       MR. GENTILE:  We have.

16       MR. MOSLEY:  Yes, your Honor.

17       THE COURT:  I notice the Probation Department

18  indicated, and Ms. Notopoulos takes a different view of

19  this, but I just note in passing that most of the time the

20  court usually sentences defendants not always to less than

21  what Probation recommends.  It would be hard for me to do

22  that in this particular case, right?

23       MR. GENTILE:  And we don't ask that.

24       THE COURT:  You are not asking for that, all

25  right.

4

1          So, you know, I'm sure Ms. Notopoulos also has

2    regards for the hard-working Probation Department and the

3    conscientious efforts they make to properly advise the court

4    as to what it deems to be appropriate.  So I take note of

5    that, and we'll talk more about that.  I assume it is

6    basically triggered by Mr. Panzera is medical situation, but

7    we'll talk more extensively about that.

8          The presentence report is dated February 19, 2014.

9    It indicates that the defendant was arrested back on

10   June 14, 2012, just a little bit more than two years ago.

11   He was released the next day, and ultimately there was a

12   $1 million secured appearance bond, which was put forward.

13         The addendum to the presentence report, which I

14   have, is dated April 7, 2014, and there are a number of

15   paragraphs which counsel takes issue with.  We just want to

16   make sure that none of these will require any Fatico

17   hearing, that there's no problem here that would prevent us

18   from going forward.  We'll talk about that.

19         I have the Preliminary Order of Forfeiture, but

20   now I have been given an amended preliminary order of

21   forfeiture.  I don't know what the amended entails.  Maybe

22   you can tell me about it.

23         MS. NOTOPOULOS:  Your Honor, the amendment has a

24   different forfeiture amount of the seized funds.

25         THE COURT:  Well, the amount that I have here

5

1  initially was $3,267,252, and not the forgotten .10, right?

2          MS. NOTOPOULOS:  Yes, your Honor.

3          THE COURT:  How is it different?

4          MS. NOTOPOULOS:  It's about $100,000 more than

5  that.  It is $3,367,610.07.

6          THE COURT:  If Mr. Gentile does not make issue

7  with that, I'm willing to sign the amended order of

8  forfeiture now.

9          Is there any issue here?

10         MR. GENTILE:  We have now done the countering.  We

11 acknowledge it's very possible and accept the government's

12 representation that they have seized another $100,000 that

13 they didn't realize.  So we do not quarrel with that.

14         THE COURT:  So let's sign the amended.  It says

15 Preliminary Order of Forfeiture, but it will be tantamount

16 to the final order, because paragraph seven says if I say

17 so-ordered, that it will be deemed final.  So let me take

18 care of that now.  Okay?

19         (Pause)

20         We'll date this today, June 19th.  I will write

21 "so-ordered" as per paragraph seven, okay.  So I have signed

22 this.

23         Now, I have the government's letter of June 19th,

24 and arguing extensively for a custodial sentence, and

25 addressing the medical issues, as well as pen Sarah is

6

1    so-called attempts to assist the government.

2            I have, then, the underlying transcript of the

3    minutes before Magistrate Judge Azrack on November 5, 2013.

4    And the Plea Agreement, which has been previously marked

5    Court Exhibit No. 2 of that same date.  And I have reviewed

6    the transcript here, in particular the allocutions, in

7    respect to Mr. Panzera is crimes, that's set forth on pages

8    19 and 20.  Page 19 deals with Count Twelve, and then

9    thereafter on page 20 there's the allocution in respect to

10   the conspiracy, that is part of Count Thirteen, right.  So I

11   think it's all in proper order, and I will accept the

12   recommendation of the Magistrate Judge that I accept the

13   plea.

14           The plea agreement, as I mentioned before, was

15   previously marked as Court Exhibit No. 2, and it's dated --

16   the copy I have is undated, November blank.  I assume,

17   unless I hear anything to the contrary, that it was entered

18   into on the same date as the plea, November 5, 2013; is that

19   correct?

20           MR. MOSLEY:  I believe that's correct, your Honor.

21           THE COURT:  So I will not date it.  The record

22   will reflect that we agree that the plea agreement was

23   executed the same time as the allocution.  All right.

24           Of note, it estimates a range of imprisonment of

25   twenty-four to 30 months, with an acknowledgment that the

1   restitution to the Internal Revenue Service in the amount of

2   $841.17.  Paragraph four provides that the defendant will

3   not file an appeal or challenge the sentence or conviction,

4   if the court imposes a term of imprisonment of 41 months or

5   below, which will be the case.

6           Notwithstanding that, we understand there's a

7   window of opportunity to appeal, if the constitutional

8   rights were violated, and if the defendant wishes to do

9   that, he would have to file a notice of appeal within

10  14 days from when the written judgment is entered, and

11  perfected within 30 days thereafter, unless he gets an

12  extension of time from the proper authority.

13          So let's stop for a second.

14          Tell me what has happened with the restitution.

15  Has it been paid yet?

16          MR. GENTILE:  It has not yet, your Honor.

17          THE COURT:  Any of it?

18          MR. GENTILE:  If you look at the financial

19  situation that he has, he needs to try to put together the

20  funds, and he fully intends to pay it off.

21          THE COURT:  So I'm just curious to see what the

22  status is.  If I remember, there is $2,100,000 of funds

23  available for the restitution.

24          How do you so advise me.  What is happening?  What

25  is going to happen?

8

1          MR. GENTILE:  Well, your Honor, those funds that

2     he has are because of his incapacity or what he needs the

3     rest of his life.

4          THE COURT:  I understand that, but that means

5     there's not going to be restitution that is going to be

6     made?

7          MR. GENTILE:  There is.

8          THE COURT:  Tell me how that is going to come to

9     pass?

10          MR. GENTILE:  I believe, and I'm so informed, that

11     Craig Panzera is committed to dipping into that fund that he

12     had thought would take him the rest of his life and pay off

13     the taxes.

14          THE COURT:  When is that going to happen?  I just

15     want to get some clarity here, because the recommendation,

16     of course, calls for --

17          MR. GENTILE:  Within 30 days he has to liquidate

18     the pension funds.

19          THE COURT:  There are funds.  I understand what he

20     is up against.  You know, the $946,000, et cetera, for

21     restitution does not consume the entire $2.1 million, and he

22     has clearly a fungible account, about a million four, with

23     mutual funds, I guess, right?

24          MR. GENTILE:  Yes, your Honor.

25          THE COURT:  So the money is available.  I know

9

1   he's hard-pressed.  I'm not inclined to put him in jail

2   because he will be suffering greatly, once he pays that

3   restitution.  So I just want to say if he's willing to pay

4   that within 30 days, I will make that a specific condition,

5   if I give him probation.

6           MR. GENTILE:  Yes, your Honor.

7           THE COURT:  So he has to understand, though, that

8   if I give him probation, that he has to do what is obviously

9   uncomfortable, but it is a form of some punishment.

10          MR. GENTILE:  It certainly is.

11          THE COURT:  He has to pay it within 30 days.  If

12  he doesn't do that, if I give him probation, it will be a

13  violation and subject to being incarcerated.  We'll talk

14  more about it.  All right.

15          MR. GENTILE:  I would just add to that, if you

16  would, your Honor.  If after making every effort there's

17  some stall in liquidation, that we contact the court.

18          THE COURT:  For good reason there's some problem

19  liquidating the funds.  I don't see that will happen.  It

20  doesn't make much logic to me.  It seems to be liquidated.

21  If I give him probation, at least I have to make sure that

22  this restitution, the million dollars, will be paid.

23          MR. GENTILE:  The defendant understands it is a

24  condition of probation, and if he fails to do it, he's in

25  violation of probation.

1          THE COURT:  So we are clear about that, if I give

2    him probation.

3          Then last, defense counsel, Exhibits A through E,

4    and I reviewed that, and, you know, I have gone carefully

5    through the medical reports, which may just compel the court

6    or motivate the court to give him probation, and we'll talk

7    more about that in due course.

8          Now, is there anything else I should have in the

9    sentencing file that may inadvertently didn't make its way

10   in the file?  Do I have everything?

11         MR. GENTILE:  No, your Honor, I think you covered

12   it all.

13         THE COURT:  Ms. Notopoulos, everything is here?

14         MS. NOTOPOULOS:  Yes, your Honor.

15         THE COURT:  So let's make the requisite

16   calculation, then we'll have interactive chats.

17         All right.  On page 12 we have, in respect to

18   Count Twelve, failure to maintain an effective anti-money

19   laundering felony, I didn't know it was a crime until this

20   case, but apparently it is.  So we have a base offense level

21   of eight, with two levels added because the unlawful

22   activity was more than $100,000, and it brings us up to a

23   total adjusted offense level of 13, because we have three

24   levels also added because he's a manager or supervisor of

25   this activity involving five or more participants or

1  otherwise -- I don't think Mr. Gentile was challenging any

2  of those calculations.  So that would be an adjusted offense

3  level of 13.  The sentencing range is triggered by Count

4  Thirteen.  So we have a base offense level of 24, and

5  there's no adjustment to that, with two levels off for

6  acceptance of responsibility -- three levels, I should say.

7  That brings us to a total offense level of 21, and that

8  absorbs Count Twelve as well, I suspect.

9         Do you take any issue with respect to any of these

10  calculations or any of these adjustments?

11         MR. GENTILE:  No, your Honor, except for the --

12  the Probation Department varies from what both sides had

13  agreed to, because the Probation Department added in

14  additional sums that are not charged, and held --

15         THE COURT:  The total offense level is 21.  I

16  don't see anything here will show things that really make

17  any difference in terms of calculating the adjusted offense

18  level.

19         MR. GENTILE:  Is your Honor reading from the

20  probation report or the stipulation?

21         THE COURT:  I'm going through the calculation of

22  the advisory guideline range.  It has nothing to do with

23  anything dealing with the state.

24         MR. MOSLEY:  Your Honor, the Probation Department

25  did a guidelines calculation that was based on a tax base

12

1   level that was higher.

2          THE COURT:  I don't have any proposed guideline

3   calculation from the Probation Department.  I don't know

4   what you are talking about.

5          MR. GENTILE:  In any event, we don't want to

6   quarrel about that.

7          MS. NOTOPOULOS:  And we don't want to go to a

8   Fatico hearing.

9          THE COURT:  We're mixing things here.  You are the

10  forfeiture person, right?

11         MR. MOSLEY:  Yes.

12         THE COURT:  You don't know anything about these

13  things.  You want to take a look over these things, look at

14  page twelve, okay.

15         MS. NOTOPOULOS:  Your Honor, I think just to

16  clarify.  What the parties are saying is Probation, in

17  coming up with that base offense level, included federal tax

18  and state tax.  The plea agreement was just based on the

19  federal tax.

20         THE COURT:  So now we are talking about Count

21  Thirteen?

22         MS. NOTOPOULOS:  Correct, your Honor.

23         THE COURT:  Yes, I see what you are talking about

24  now.  The defendant is held accountable for a $1,185,000,

25  which includes apparently the state tax as well, right?

13

1        MS. NOTOPOULOS:  Right.

2        THE COURT:  Okay.  So you don't want to hold him

3   accountable for that for guideline calculation purposes,

4   correct?

5        MS. NOTOPOULOS:  Correct, your Honor.

6        THE COURT:  It would not be 24.  It would be what,

7   22?

8        MS. NOTOPOULOS:  With acceptance of responsibility

9   and everything, I believe we are down to 17.

10       THE COURT:  The base offense level is not going to

11   be 24.  It's now going to be under one million, right?  So,

12   that will not be 24.  It will be what, 22?

13       MS. NOTOPOULOS:  Twenty.

14       MR. GENTILE:  Twenty.

15       THE COURT:  Twenty?  Should I double check it with

16   my book or accept the fact, since it is under one million,

17   the guidelines calculation will be 20, instead of 24, and

18   I'm taking it on good faith and everyone agrees, right?

19       MS. NOTOPOULOS:  Yes, your Honor.

20       MR. GENTILE:  Yes, your Honor.

21       THE COURT:  So that would wash out to a total

22   offense level of 17, not 21; is that correct?

23       MS.  NOTOPOULOS:  That's correct.

24       MR. GENTILE:  That's correct.

25       THE COURT:  Now we are on the same page.

14

1          A criminal history category one means the advisory

2    guidelines range is going to be 23 --

3          MR. GENTILE:  Twenty-four to 30 months.

4          MR. MOSLEY:  Twenty-four to 30 months, your Honor.

5          THE COURT:  Twenty-four to 30.  I will double

6    check that.          (Pause.

7          A level 17, category one, is 24 to 30.  Now we are

8    all in agreement, right?

9          So now let's hear from counsel as to how I should

10   sentence the defendant.  All right?  I know that you are

11   basically in agreement with Probation, obviously,

12   Mr. Gentile, and it's triggered by in large part his medical

13   condition.  So you can speak on behalf of your client, if

14   you wish to, and then I will hear from Ms. Notopoulos.

15          MR. GENTILE:  You wish me to address the court

16   now?

17          THE COURT:  You don't have to, if you don't want

18   to.

19          MR. GENTILE:  Of course I do.  And I would like at

20   the outset, your Honor, to draw the Court's attention to the

21   people that are here on behalf of Craig Panzera, family and

22   friends, of great support.  And it's not limited to them,

23   but of course the persons who wrote letters to you showing

24   him to be a person of compassion, goodwill, and good deeds.

25   And I think that it is a factor in his life, and what he is

1   that all merits probation.

2          We looked at the submission from the government

3   that we received a few hours ago and we don't wish to

4   quarrel with the government, but there are some aspects of

5   it that at least need clarification.

6          When in talking about his medical condition, I

7   respectfully submit to the Court that the Probation

8   Department in their report on his physical and mental

9   condition is more accurate and in greater depth than the

10  understanding that the government gives to this matter.  I

11  think that while the government points out that there are

12  treatments for Mr. Panzera, that the treatment would be far

13  better outside custodial situation, and some of the

14  custodial places where this is available are a bit harsher

15  and more difficult for a person to be in.

16          THE COURT:  If you are incarcerated, there are --

17  chances are he would be assigned to some sort of a camp

18  facility, because of his condition they can't feed him and I

19  would be giving incarceratory time in prison.  I assume

20  that's correct.

21          What strikes me also, Ms. Notopoulos, he was in a

22  coma for a period of days.

23          MR. GENTILE:  He was induced for months.

24          THE COURT:  Induced for months.

25          MR. GENTILE:  Then after he emerged from the coma,

16

1  he had to do all of the aspects that are considered routine

2  in life, talking, walking, writing, reading.

3        THE COURT:  And he's subject to epileptic fits at

4  anytime.  He has to be under constant medical care.

5        MR. GENTILE:  As the doctor points out, these

6  seizures take place on a constant basis, and the most

7  difficult part of all of that is when the doctor makes his

8  finding, with all of this in mind, his intellectual

9  functioning at the current time is exceptionally impaired,

10  and this is the devastating part, your Honor, and prognosis

11  for improvement is almost non-existant.

12        THE COURT:  As Dr. Ney reports in his August 19,

13  2013 letter, he's against medical odds that the patient is

14  alive and can ambulate and speak.  His intellectual

15  cognitive functioning are extremely impaired, as detailed,

16  and his prognosis for improvement is nil.

17        You know, I have great respect for you, Ms.

18  Notopoulos, but I can't put this person in jail.  You can

19  appeal to the Second Circuit, if you want to.  I'm not

20  surprised that you are not as sensitive to his plight as the

21  Probation Department.  If you would like to talk, if you

22  want to make a record, but no way I will put him in jail.

23        I also speak in this respect, the fact he will be

24  paying close to a million dollars within 30 days, he's

25  really, you know, not exactly going away scot-free.

1          On top of that, you have the forfeiture.  So he

2    has been pretty much, you know, taken to task in a major way

3    here.

4          You add that, plus the fact that his family has

5    been here, his charitable work, and impressed with the

6    letters I have from Harbor Chase, and this person was a near

7    death experience, I can't see any judge putting this man in

8    jail.  He will pay up.  If he doesn't pay that restitution,

9    we'll come back and again have a little chat about things,

10   right.  But don't you think putting him through that

11   stressful situation, having to liquidate a significant sum

12   of money, cries out for an incarceratory sentence?

13          MR. MOSLEY:  The government would somewhat

14   disagree with that, your Honor, but we understand all of

15   those factors are appropriate when considered by the court

16   with respect to a variance from the guidelines.

17          THE COURT:  I'm not talking downward departures

18   either.  I don't get involved with those nuances.  We are

19   talking about a sentence sufficient, but not greater than

20   necessary, to meet the ends of our guidelines and statutory

21   standards, right.  So I know we have this subsequent to

22   Booker departure is warranted.  To me it's academic.  The

23   3553(a) is what is the sentence concept of fairness and

24   reasonableness.

25          You want to say something else?

1       MR. MOSLEY:  No, your Honor.  That was our primary

2   concern, your Honor.  The court is obviously free to

3   consider all of those factors under 3553(a).

4       THE COURT:  We are talking about them right now,

5   severe medical conditions, support from the family, good

6   deeds that he has done.  And I understand what he was

7   involved with here.  He's being punished in many, many ways

8   here.  He will not be in that business anymore, and he's not

9   employed anymore.  He has to make due on the savings that he

10  was able to put together.

11      Let me ask you a profound question, since I

12  appreciate you coming here.  If one day when you are wearing

13  the black robe, would you send this person to prison?  You

14  can say yes.  It's no crime to say yes.

15      MR. MOSLEY:  Well, I'm not sure it's an

16  appropriate position for me to take at this point.

17      THE COURT:  You don't have to answer that question

18      MR. MOSLEY:  I will not answer that question, your

19  Honor.  I think our position, at least in terms of my role

20  and response -- our role and responsibility in terms of the

21  law is to set forth some sort of example for other people

22  who violate the statute.

23      THE COURT:  I thought my responsibility was to do

24  justice.  Am I reading that wrong?  I remember reading a lot

25  about what the responsibility of the United States

19

1    Attorney's Office is, not necessarily to insist on the

2    letter of the law, but to do justice.  You agree with that,

3    don't you?

4              MR. MOSLEY:  Yes.

5              THE COURT:  What do you think is the just thing to

6    do in this situation?

7              MR. MOSLEY:  Well, I think that's why you have the

8    black robe, your Honor.

9              THE COURT:  Sometimes it is not easy to appear

10   before a judge, is it?

11             MR. MOSLEY:  No, it's not.

12             THE COURT:  You love the job and enjoy it.  You

13   want to do it.  It's your passion, right?

14             MR. MOSLEY:  Absolutely.

15             THE COURT:  Some of your colleagues wind up as

16   defense lawyers.  Is that something you may be looking

17   forward to do?

18             MR. MOSLEY:  It is something I have done.

19             THE COURT:  Aren't you glad you have the

20   opportunity and pleasure to be in front of Judge Block

21   today?

22             MR. MOSLEY:  I'm happy to step into any court in

23   the United States.

24             THE COURT:  Well said.

25             Anything else, Mr. Gentile?

20

1       MR. GENTILE:  We understand the court intends to

2  sentence him to probation, and it's greatly appreciated

3       Mr. Panzera has prepared a brief statement that he

4  would like to say.

5       THE COURT:  I will give him the opportunity before

6  sentence is imposed, but as long as we understand that my

7  sense of fairness here is he will have to ante up that

8  million bucks.

9       MR. GENTILE:  The only other thing I would add is

10  the court has been so eloquent in pointing out the various

11  prices that he's paid here.  In addition to the forfeiture,

12  I don't know if the court had the opportunity to note that

13  he had -- you know, he's running check cashing businesses,

14  and he was in the process of negotiating to sell them before

15  the arrest, and he was negotiating at 6- to $9 million, and

16  after all of this is said and done, he sold it for about

17  five percent of that value.  So, an additional loss, not

18  that it wasn't warranted, but an additional severe financial

19  loss here.

20       THE COURT:  Well, you know, the value of the

21  business obviously was affected by the fact that he was

22  engaging in illicit activity.

23       MR. GENTILE:  Well, actually, the value of the

24  business -- these activities were a very small percentage of

25  what the businesses were doing.  So had he not done this and

1   he shouldn't have done this, these were very valuable

2   businesses and very profitable.

3          THE COURT:  His parents were the ones that created

4   this business.  They have a beautiful home down in Naples.

5   They have not been charged with criminal responsibility.

6          MR. GENTILE:  They have not, your Honor.  This

7   family business has been going on for decades, and it's

8   unblemished.  But for this activity by Craig, it always had

9   a sterling record.

10         THE COURT:  If it's not for his severe physical

11  problems and my willingness to give him probation, he might

12  be spending time in jail.

13         MR. GENTILE:  I understand that, your Honor.  He

14  does, too.

15         THE COURT:  I don't think he fabricated his

16  physical problems.  This is a human situation that I think

17  judges should take into consideration, but he should

18  understand they look upon what he has done seriously as

19  something that's inexcusable.  He had a good business, you

20  see.  It's one thing if you are desperate.  Sometimes you

21  see people coming here desperate, you don't excuse their

22  criminal behavior, but it is almost understandable on some

23  level.  But when you have people who have wonderful

24  businesses and do not have to feel desperate about engaging

25  in criminal conduct in order to eat and put a roof over

1   their head, that's something that bothers me a great deal.

2   And while I have been a little difficult with the

3   government's attorney today, it's my nature, right.  I don't

4   want anything I'm saying to excuse this criminal behavior.

5   I find it inexcusable.

6           MR. GENTILE:  That is perfectly understood, your

7   Honor.

8           THE COURT:  Mr. Panzera, do you wish to say

9   anything?  You don't have to speak, but you have a right to

10  speak before sentence is imposed.  It is up to you.

11          MR. GENTILE; He has a statement prepared.  It's

12  brief.

13          THE DEFENDANT:  Your Honor, first I would like to

14  express my gratitude for the love and support of my family

15  and friends during this most very difficult time.  I also

16  wish to express my appreciation to the Probation Department

17  for recommending probation and for taking the time to

18  understand my medical issues.

19          Next, I want to apologize to the court and my

20  family and all the people who depended on me.  I also want

21  to express my sincere remorse for the wrongs that I have

22  done that bring me here today.  My actions have cost me my

23  business and savings and most important my good name.  I

24  fully accept responsibility and blame no one but myself for

25  my situations.  I have caused my family and loved ones pain

23

1  and sorrow.

2          I ask the court and their forgiveness.  I want to

3  assure them and the court that I intend to earn their

4  forgiveness and lead a better and more caring life.  I only

5  hope that the court will give me the opportunity to spend my

6  remaining time with the people here today, especially my

7  mother and father, and all of the other people in my life.

8  While I'm no longer able to work, I'm able to give my time

9  and energy to help others, which is what I fully intend to

10 keep doing, if the court gives me that opportunity.  Thank

11 you, Judge Block.

12         THE COURT:  All right.  So the sentence is going

13 to be on Count Twelve three years probation, also Count

14 Thirteen three years probation, and that will run concurrent

15 with Count Twelve.

16         In respect to Count Thirteen, we have the order of

17 restitution in the amount of $946,841.17 that's owed to the

18 IRS.  I guess that will be payable to the clerk's office,

19 Mike, then sent to the IRS; is that how it works?

20         THE COURT CLERK:  Yes, your Honor.

21         THE COURT:  You work out the details who the payee

22 will be with Mr. Inelli, so we make sure there's a proper

23 transition.

24         MR. GENTILE:  I will, your Honor.

25         THE COURT:  That's payable in 30 days, that's an

24

1    absolute condition of probation.  You understand that?

2          There's a $200 special assessment, which is

3    required as a matter of law, two counts, $100 each.

4          The following special conditions will be imposed:

5    You already mentioned, of course, the restitution.

6          Then the forfeiture order.  Has that money already

7    been forfeited?  The government has --

8          MR. MOSLEY:  That money has been seized by the

9    government.

10          THE COURT:  So you got it, $4 million here, right?

11          MR. MOSLEY:  Give or take.

12          THE COURT:  So, you know, that's a significant sum

13    of money which, you know, it wasn't exactly expecting to,

14    you know, be paid to the government.  So, that's gone,

15    right.  So, with that, plus the restitution, we are talking

16    about four and a half million dollars.

17          MR. MOSLEY:  Pretty good approximation, your

18    Honor.

19          THE COURT:  Pretty good, almost a form of a

20    punishment he's suffering.  He's suffering severely here

21    economically.  All right.

22          Then the defendant shall make full financial

23    disclosures to the United States Probation Department, only

24    necessary until the restitution is paid.  Once it's paid,

25    there's no reason to make financial disclosures anymore, I

25

1   suspect, right.

2          I'm not going to impose any other special

3   conditions.  I know there's a recommendation for 200 hours

4   of community service.  From what I read here, he does a lot

5   of charitable work already, and I think that with his

6   physical and mental impairments, which are manifested just

7   in front of me as he was reading his statement here of

8   contrition, that it is not reasonable to require any

9   additional community service.

10          There are general conditions of probation, which

11   the clerk of the court is handing to you, Mr. Panzera.  You

12   have to check in with Probation, Mr. Gentile, that leads you

13   through that process, and cooperate with the Probation

14   Department within the three years you are on probation in

15   terms of reporting to them, and they will have to tell you

16   what you have to do, and make sure you comply with all of

17   these conditions as well.

18          There are open counts here.  Count One also

19   charges him personally.  That will be dismissed at this

20   time, right?

21          MS. NOTOPOULOS:  Yes, Your Honor.

22          THE COURT:  And the underlying indictment, to the

23   extent it implicates him as well.

24          MS. NOTOPOULOS:  Correct, your Honor.

25          THE COURT:  Anything else that needs to be

26

1    attended to?

2         We have the executed Order of Forfeiture, which

3    will be given to counsel today.  You will need that.  I

4    think that's about it.

5         Anything else?

6         MR. GENTILE:  Your Honor, may the defendant assume

7    as a resident of Florida he will be working and doing his

8    probation in Florida?

9         THE COURT:  When you speak to the probation

10   officer here, you should check in with them today, they will

11   work out arrangements where he will be supervised down in

12   Florida.  I'm sure that's the way it will work out.  Check

13   in here first and coordinate.

14        Anything else from the government's perspective?

15        MS. NOTOPOULOS:  Not for this defendant, your

16   Honor.

17        THE COURT:  You did an excellent job for the

18   government.

19        Let's turn to the corporation.  We have taken care

20   of this.

21        So here's what we have in the so-called

22   corporation file:  We have a recommendation from the

23   Probation Department as far as Counts One and Twelve.  So

24   the case against Belair Services, Inc., as well as Count

25   Twelve.  And so you see the comments?  They recommend

27

1    forfeiture of it will be a little bit more now, right?

2            MR. MOSLEY:  Yes, Your Honor.

3            THE COURT:  $3,267,000; is that correct?

4            MR. MOSLEY:  $3,367,610.07.

5            THE COURT:  $3,367,000, is this the right one?

6            MR. MOSLEY:  There's an amended one.  It is the

7    same amount that was in the order for Mr. Panzera.

8            THE COURT:  $3,367,610.07.

9            So, actually it's the same, really, as the

10   forfeiture that applied individually, but I think this

11   covers the belts and suspenders, because it wraps up the

12   corporation, as well as him as the sole owner of the

13   corporation.

14           MR. MOSLEY:  The bank accounts were Belair bank

15   accounts.

16           THE COURT:  So that's already been seized, and

17   this protects the government, because it covers the

18   corporation, as well as the individual.

19           MS. NOTOPOULOS:  Yes, your Honor.

20           THE COURT:  I will sign that now first, okay, and

21   will say "so ordered."

22           MS. NOTOPOULOS:  Thank you, your Honor.

23           THE COURT:  As per paragraph seven.

24           (Pause)

25           I have done that, and that's what principally

28

1   Belair Services, Inc. is all about to make sure we have that

2   forfeiture covered.

3           There will be an $800 special assessment.  Why is

4   that?  I don't understand why.  All he did was the two

5   counts.  Anything I should know about this?

6           MR. MOSLEY:  The special assessment is mandatory,

7   isn't it?

8           THE COURT:  Pardon?

9           MR. MOSLEY:  Isn't the special assessment

10  mandatory?

11          THE COURT:  Yes, but why is it 800?

12          MR. MOSLEY:  There are two counts, your Honor.

13  There's Count One and Count Twelve.

14          THE COURT:  They are each $100 or is there

15  something special here?

16          MR. MOSLEY:  I think it's because it's a corporate

17  defendant, your Honor.

18          THE COURT:  Corporate defendants pay more?

19          MS. NOTOPOULOS:  I believe so, your Honor.

20          THE COURT:  Is that true, Mr. Gentile.  It's $400

21  a pop for corporate defendants?

22          MR. GENTILE:  I'm not aware of that, your Honor.

23          THE COURT:  I'm just trying to find out where that

24  is reflected.

25          (Pause)

29

1        THE COURT:  $400 each count, that is mandatory.

2    According to the section, corporate liability is $400.  Did

3    you know that, Ms. Notopoulos, before?

4        MS. NOTOPOULOS:  Well, if I did, I certainly

5    realized I knew it before now.

6        THE COURT:  Okay.  So here's what we have:  We

7    have the presentence report with respect to the defendant

8    corporation Belair Payroll Services, Inc., dated February

9    26, 2014, and it charges the corporation with two counts:

10   Count One, which is the conspiracy to cause the filing of

11   false currency transaction reports; and Count Twelve, which

12   is the money laundering program.

13       So the guideline calculations on page 13 has a

14   base offense level of 28; is that correct?  We have any

15   problems with that?  I mean, it is a convoluted type of

16   calculation.  Does anybody take exception to that?

17       The base offense level is six, plus the number of

18   offense levels in guideline 2B1.1; value of the funds $28

19   million.  And then also 22 levels are added to six, for a

20   base offense level of 28.  You need to go over this to make

21   sure that is correct or are we all in agreement?

22       MR. GENTILE:  I think both sides would

23   respectfully refer the court to the plea agreement, where we

24   agreed to what the guideline would come out to.

25       THE COURT:  So 28, there's no disagreement as far

1    as that is concerned.  Adjusted offense level is 28.  So

2    Count Twelve carries a base offense level of eight, and

3    there's two levels added to that, because we are dealing

4    with unlawful activity in excess of $100,000, in a 12-month

5    period.  So that gives us an adjusted offense level of ten.

6              As far as the multiple term adjustment, there's

7    nothing affected by it.  So we have an adjusted offense

8    level of 28.

9              We had something called culpability score

10   computation, and that comes out to a level five.  So how

11   does that impact the actual advisory guideline range?  I'm

12   not so clear how this plays out.

13             Who are the people here in this courtroom who know

14   all about these nuances?

15             MS. NOTOPOULOS:  Your Honor, could I ask what you

16   are reading from?

17             THE COURT:  I'm reading from the Presentence

18   Report of February 26th, United States of America v. Belair

19   Payroll Services, Inc.

20             Do you see that?

21             MS. NOTOPOULOS:  I don't think any of us got the

22   actual Belair probation report.

23             THE COURT:  Really.

24             MS. NOTOPOULOS:  However, I think we do agree at

25   the end of the day that the plea agreement comes out to a

1    culpability score of five.

2              THE COURT:  Comes out to what?

3              MS. NOTOPOULOS:  A culpability score of five.

4              THE COURT:  Then how does that impact the

5    guideline calculations?  This is all new stuff to me.

6              MR. MOSLEY:  It's a fine.  There's a base

7    culpability score of five.  The parties agreed in the plea

8    agreement for Belair that there would be a one point

9    enhancement for more than ten employees, and an offense

10   participant with substantial authority, and then that would

11   be reduced by a further one point for Belair through Mr.

12   Panzera's acceptance of responsibility, for a total

13   culpability score of five.

14             THE COURT:  So, what does that mean?

15             MR. MOSLEY:  Well, you have a minimum fine, which

16   is the base fine.

17             THE COURT:  The culpability score triggers the

18   fine, right?

19             MS. NOTOPOULOS:  Yes, your Honor.

20             THE COURT:  So if we are not disagreeing, I guess

21   -- I just want to get through this.  It doesn't amount to a

22   whole bag of beans, does it?  There's no disagreement here

23   that there's a combined adjusted offense level of 28.  This

24   culpability score triggers the fine.  I will not fine him,

25   because of all of this forfeiture.  The recommendation by

1  the Probation Department is that the forfeiture covers the

2  ball park, so to speak.

3          Do you take any issue with that?

4          MR. MOSLEY:  No issue with that, your Honor.

5          THE COURT:  So I want to get through this

6  nonsense, all right?  We agree?

7          So Count One of two simply being a forfeiture of

8  that amount of three million -- once again, $3,367,610.07.

9  There will be no fine.  Special assessment, $200.  And that

10 will cover the proceedings against Belair Payroll Services

11 Inc..  I'm hardly a maiden of this particular area, but we

12 all agree what we are talking about here.

13         MS. NOTOPOULOS:  Yes, your Honor.

14         The only thing that happened here, Probation came

15 up with a base fine amount that was far exceed what the

16 government and defense agreed, but, nonetheless, at the end

17 of the day, the culpability score is the same.  We have no

18 objection to the court's sentence of simply the forfeiture

19 amount.  We are not advocating a fine.  So at the end of the

20 day, I believe we are all in agreement this is fair.

21         MR. MOSLEY:  I think we are all in the same boat,

22 your Honor.

23         THE COURT:  I guess the corporation would have the

24 right to appeal.  Let's see what the plea agreement says in

25 that respect.

33

1        (Pause)

2        I have that, and I have the underlying transcript

3  of the minutes in 2013.  I will accept the recommendation.

4  Paragraph four, the defendant agrees not to file an appeal

5  or challenge his conviction or sentence, if the court

6  imposes a total combined fine of a million dollars, and I'm

7  not imposing any fine.  So in effect he waives his right to

8  appeal, the corporation, unless, once again, there's

9  something of constitutional significance that closely

10 resembles that, and I guess the corporation will file a

11 notice of appeal within 14 days.  Unless there's an

12 extension of time.  We have to go through these types of

13 things, because the protocol, you know, requires us to do

14 that.  But, as a practical matter, we understand what we are

15 all talking about, that's what is important here.

16       I guess Mr. Panzera is entitled to speak on behalf

17 of the corporation, before sentence is officially imposed.

18       MR. GENTILE:  He waives that right, your Honor.

19       THE COURT:  Very good.

20       All right.  Whatever right that is, he waives it.

21 So I think the official sentence now is Counts One and

22 Twelve, the forfeiture we spoke about, the $800 special

23 assessment, and that, I think, takes care of the indictment

24 against the corporation.

25       Is there anything else that we have to attend to?

34

1    He has a right to appeal.  We understand each other.  The

2    important thing is what happened in Mr. Panzera's sentence.

3              Anything else we wish to do here today?

4              Everybody okay?

5              MR. MOSLEY:  Nothing from the government, your

6    Honor.

7              THE COURT:  Everyone is sufficiently confused or

8    not confused?

9              MR. GENTILE:  It's as clear as can be, your Honor,

10   and we thank you.

11             THE COURT:  It's as clear as mud, right?

12             Mr. Panzera, you have been through a lot, and at

13   the end of the day here I have spoken about my thoughts

14   about the government's position.  I spoke about my thoughts

15   on your criminal culpability.  You suffered a great deal.

16   You have a life to live.  You have a supportive family, and

17   I think that you have thoughts of good deeds now, which you

18   apparently have done and impressed with that.  I think you

19   should continue that and give quality to your life and live

20   a productive life.  Sometimes when people go through

21   adversity, not all the time, but sometimes I've seen it

22   happen, sort of almost counter-intuitively, it's a blessing

23   in disguise.  They find quality to their lives that they

24   didn't have before.  I've seen many examples of that, and

25   maybe you fall into that category as well.

1      THE DEFENDANT:  Your Honor, they didn't think that

2   I would have lived when I first I had the cancer.  Then when

3   I crashed on a motorcycle, they didn't expect I would be

4   able to walk or talk, and I survived that.  And I thank you

5   for everything.

6      THE COURT:  You get the sense that the good Lord

7   allowed you to survive your cancer.  I think that would be a

8   good perspective.  You look at it in that perspective.  You

9   are here, still alive and kicking, and you are here for a

10  reason.  I think the idea now contributing to society in a

11  constructive way is probably the reason why your life was

12  spared.  If you believe in these things, I think that's a

13  pretty good take on things, right.

14     THE DEFENDANT:  Thank you, your Honor.

15     THE COURT:  Thank you all for your cooperation.  I

16  will look forward to the time when you are a federal judge

17  and I will be appearing before you.

18     MR. MOSLEY:  Thank you, your Honor.

19     (The sentence is concluded.)

20

21

22

23

24

25